[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case was previously tried before Attorney Trial Referee Geoffrey L. Squitiero on March 16, 2001. He rendered his report on August 16, 2001, and an objection to its acceptance was taken on September 7, 2001. On or about September 17, 2001, the court revoked the reference to the CT Page 9183 Attorney Trial Referee and ordered the matter placed on the trial list. On June 20, 2002, the parties filed a joint motion to submit the March 16, 2001, trial transcript and post trial briefs to the undersigned judge in lieu of a retrial. That motion was granted. The court has now read the transcript and all the briefs submitted post trial. The court in its decision will quote broadly from these briefs in rendering its opinion.
The following facts were stipulated to by the parties in their Joint Trial Management Conference Report dated March 12, 2001, or presented at trial.
1. The plaintiff is an individual residing at 280 Taft Avenue, Bridgeport, Connecticut.
2. The defendant House of God is a Connecticut religious corporation with its principal place of business at 500 Pequonnock Street, Bridgeport, Connecticut.
3. The plaintiff issued the following checks to the defendant on or about the dates indicated:
a. November 23, 1994 $1,229.00
b. December 20, 1994 $9,000.00
c. December 28, 1994 $3,000.00
d. January 18, 1995 $2,500.00
e. August 9, 1995 $970.00
4. The checks listed in paragraph 3(a-d) were drawn on the account of "Washington Enterprise", while the check listed in paragraph 3(e) was drawn on the account of "Charles W. Washington, Jr."
5. "Washington Enterprise" was the name of a loan brokering business which the plaintiff began in 1966 and operated for a short time until he went to work full time as a welding supervisor for Carpenter Technologies in Bridgeport, Connecticut. Washington Enterprise was an unsuccessful business which never succeeded in consummating a single loan transaction. At the time the plaintiff loaned funds drawn on the bank account in the name of Washington Enterprise, the business and the business name of Washington Enterprise had been inactive for more than 25 years.
6. The checks listed in paragraph 3 constituted loans from the plaintiff CT Page 9184 to the defendant totaling $16,699.50. The plaintiff did not know at the time each loan check was written that he would be making additional loans; each loan arose separately and each check represents a separate loan. The loans were all used variously for closing costs, building materials, plumber and plumbing supplies, electrician services, and panic doors on a building at 500 Pequonnock Street in Bridgeport purchased by the defendant.
7. The plaintiff borrowed the loaned funds against a Mastercard credit card issued by MBNA America in the joint names of the plaintiff and his wife, which credit card accrued interest at rates ranging between 16.9% and 19.9% per annum. Mr. Washington testified that he made that fact known to the defendant and its Pastor Beverly Robinson and they agreed to pay the interest to him at that same rate so he could pay his credit card debt. He claimed that each month he gave a copy of his credit card statement to Pastor Robinson and she gave him a check each month made payable to him.
8. The plaintiff and the defendant did not enter into a written promissory note, contract or other loan document.
9. The plaintiff has charged and demanded of the defendant interest on the loaned funds at the annual credit card rate of interest which exceeds 12 percent per annum and, in the instant civil action, seeks to recover interest at the annual credit card rate of interest which exceeds 12 percent per annum.
10. The defendant made regular monthly payments in various amounts as determined and instructed by the plaintiff, most often in the amount of $325, which were increased by agreement to $425 in January, 1998. The defendant made 40 monthly payments to the plaintiff between January 20, 1995, and December 28, 1998, totaling $16,249.43 and on May 25, 1998, presented a check in the amount of $425 marked "Full and Final Paymant" which the plaintiff rejected.
11. All of the checks issued by the defendant were made payable to the plaintiff and were imprinted with both the name of the defendant and the name "Total Learning Center."
12. In December 1994, the defendant had not recorded a trade name certificate with the Bridgeport Town Clerk for the business name of "The Total Learning Center."
13. At the time he loaned the funds to the defendants, the plaintiff knew that the Total Learning Center was the name of a day care center operated by the defendant in its church building; he was not misled either by the CT Page 9185 defendant's use of that business name or by its failure to file a trade name certificate with the Bridgeport Town Clerk at that time; and he suffered no actual damage as a result of the defendant's failure to file a trade name certificate with the Bridgeport Town Clerk.
14. The defendant recorded a trade name certificate, dated January 26, 2000, for the business name of "Total Learning Center", with the Bridgeport Town Clerk on or about January 27, 2000.
15. The plaintiff claims that the loans have not been paid in full and in fact that principal and accrued interest total $23,038. The plaintiff is also seeking attorneys' fees in the amount of $15,956.20 under the CUTPA count.
The plaintiff has filed a four count complaint against the defendant alleging in the First Count a Breach of Contract; in the Second Count Promissory Estoppel; in the Third Count Unjust Enrichment; and in the Fourth Count a violation of CUTPA based on the defendant's transacting business under the name "The Total Learning Center" without filing a trade name certificate. The defendant filed an Answer and two Special Defenses, Unclean Hands and Usury.
In the Special Defense of Usury, the defendant claim that the loans in question violate Connecticut General Statute § 37-4 and are therefore barred under § 37-8. Connecticut General Statute § 37-4 provides in its entirety:
 "No person and no firm or corporation or agent thereof, other than a pawnbroker as provided in section 21-44, shall, a guarantor or otherwise, directly or indirectly, loan money to any person and, directly or indirectly, charge, demand, assert or make any agreement to receive therefore interest at a rate greater than twelve percent per annum."
Connecticut General Statute § 37-8 provides:
 "No action shall be brought to recover principal or interest, or any part thereof, on any loan prohibited by sections 37-4, 37-5 and 37-6, or upon any cause of action arising for the negotiation of such loan."
The plaintiff has expressly alleged in paragraph 5 of each count of his Complaint that he loaned moneys to the defendant, that it knew he was acquiring such funds from his credit card, and it agreed to pay the credit card interest at the rate of 19.9 percent per annum. In his trial CT Page 9186 testimony, the plaintiff continuously claims that he loaned, charged, demanded and made an agreement to receive from the defendant interest on the loaned funds at a rate in excess of twelve percent per annum and he brought this action to collect interest from the defendant at a rate in excess of twelve percent per annum. He spelled out in exhibit B1 how he calculated the interest from a low of 16.9 percent to a high of 19.9 percent.
Connecticut General Statute § 37-9 sets forth nine categories of loan transactions which are exempt from the prohibition of Connecticut General Statute § 37-4. In its Reply Brief dated May 14, 2001, the plaintiff first claims that the defendant has failed to prove usury because the defendant's pastor, Beverly Robinson, failed to testify. While that fact may be true, the plaintiff's conclusion is without merit. The pleadings and the plaintiff's testimony prove usury.
The plaintiff next claims that the Special Defense of Usury must fail because of the specific exemption provided by Connecticut General Statute § 37-9 (4). If this exemption is not applicable, the Special Defense of Usury will have been proved and it will bar any of the four counts of the Complaint pursuant to the specific language of Connecticut General Statute § 37-8, specifically, the language ". . . or upon any cause arising from the negotiation of the loan." The court has read the reply briefs of both parties on this subject and finds the reasoning in the defendant's brief to be persuasive that the exclusion claimed is not applicable to the facts of the case. The court will adopt much of the language of the defendant's brief dated May 4, 2001.
The plaintiff argues in his trial brief that his loans to the defendant are exempt from the proscription and effects of the usury statutes by virtue of Connecticut General Statute § 37-9 (4)(A). "A party seeking to come within an exception to the usury statutes has the burden of proving the applicability of that exception. Maresca v. DeMatteo,6 Conn. App. 691, 696 (1986); Mutual Protective Corporation v.Palatnick, 118 Conn. 1, 5 (1934)." M.M.M. Mortgage Co. v. Franford, 1993 WL 117718 (Hodgson, J.). The plaintiff has utterly failed to satisfy its burden of proof with respect to the exemption set forth in Connecticut General Statute § 37-9 (4)(A), and his claim that his usurious loans are entitled to the safe harbor of that exemption is, in a word, wrong.
Connecticut General Statute § 37-9 (4) provides, in relevant part:
The provisions of sections 37-4, 37-5 and 37-6 shall not affect: . . . (4)(A) any loan, carrying an annual interest rate of not more than the deposit index CT Page 9187 determined pursuant to subsection (c) of section 49-2a
for the calendar year in which the loan is made plus seventeen per cent, made to a foreign or domestic corporation, statutory trust, limited liability company, general, limited or limited liability partnership or association organized for a profit or any individual, provided such corporation, trust, company, partnership, association or individual is engaged primarily in commercial, manufacturing, industrial or nonconsumer pursuits and provided further that the funds received by such corporation, trust, company, partnership, association or individual are utilized in such entity's business or investment activities and are not utilized for consumer purposes and provided further that the original indebtedness to be repaid is in excess of ten thousand dollars but less than or equal to two hundred fifty thousand dollars, or, in the case of one or more advances of money of less than ten thousand dollars made pursuant to a revolving loan agreement or similar agreement or a loan agreement providing for the making of advances to the borrower from time to time up to an aggregate maximum amount, the total principal amount of all loans owing by the borrower to the lender at the time of any such advance is in excess of ten thousand dollars but less than or equal to two hundred fifty thousand dollars.
Piecing together the critical portions of the statute, the plain meaning and unambiguous essential elements of the exemption claimed by the plaintiff are clear: the exemption applies to a loan made to a domestic corporation which is organized for profit and engaged primarily in commercial, manufacturing, industrial or nonconsumer pursuits, and provided further that the original indebtedness to be repaid is in excess of $10,000. The plaintiff's loans to the defendant fail to qualify for the claimed exemption by reason of failing to satisfy each of these elements of the exemption.
The case cited by the plaintiff, Associated East Mortgage Company v.Highland Park, Inc., 172 Conn. 395, 404, 374 A.2d 1070 (1977), in support of its argument that the loans fall within the claimed exemption is inapposite to the case at bar. There the Supreme Court expressly found an exemption under Connecticut General Statute § 37-9 "because Highland Park, Inc., a Connecticut corporation, was engaged in the business of real estate development and was, thus, a `domestic corporation organized for profit and engaged primarily in commercial . . . pursuits.'" Id., at 405. None of those characteristics apply to the defendant. CT Page 9188
The defendant is a Connecticut religious corporation which operates a church and a day care center located in its church building. Under Connecticut law, a religious corporation is an entity organized by three or more persons uniting for public worship. Connecticut General Statute § 33-264a. It "may hold, manage, acquire, purchase, sell, convey and have and exercise any rights of ownership in real and personal property for the use and support of public worship or for any ecclesiastical, missionary, charitable or educational purpose." Connecticut General Statute § 33-264c (a).
The plaintiff, despite bearing the burden of proving the applicability of the claimed exemption from the usury statutes, offered no evidence at trial that the defendant is "organized for a profit." As far as being "engaged primarily in commercial, manufacturing, industrial or nonconsumer pursuits" is concerned, not even the plaintiff claims that the defendant is engaged primarily in commercial, manufacturing or industrial pursuits. Rather, it claims only that the defendant "engaged in nonconsumer pursuits" — citing to the second page of the trial transcript which shows nothing more than that the defendant was engaged in providing food for underprivileged families at some time prior to the first loan — and that the defendant used the loans "for nonconsumer pursuits, primarily the upkeep of its building.' (Plaintiff's Trial Brief, p. 13.)
To begin with, this claim is fatally deficient on its face. Even if the defendant was, arguendo, simply engaging in nonconsumer pursuits among its other pursuits, that would not be enough. In order for the plaintiff's loans to fit within the statutory exemption, the defendant would have to be primarily engaged in nonconsumer pursuits. The plaintiff presented no evidence tending to prove that the activity which he specifically cited — providing food for underprivileged families — is a "nonconsumer pursuit" as that term is used in the exemption and that it is the single activity in which the defendant is primarily engaged. More importantly, the plaintiff presented no evidence tending to prove that all the activities in which the defendant engaged consisted primarily of "nonconsumer pursuits." Moreover, while the plaintiff stated in his trial brief that the defendant "used the Loans . . . primarily for the upkeep of its building", maintaining the upkeep of its own building clearly is not the primary activity of the defendant.
The plain import of the term "nonconsumer pursuit" as used in Connecticut General Statute § 37-9 (4)(A) is business, trade or commerce as distingujished from activities which are conducted for consumer purposes, which are defined in Connecticut General Statute § 37-9 as "personal, family or household purchases, acquisitions or CT Page 9189 uses." The defendant is engaged neither in business, trade or commerce nor in consumer pursuits; rather, it is engaged in something completely different and unique: providing religion, in the broadest sense of the word.
It is obvious that the exemption to the usury prohibition set forth in Connecticut General Statute § 37-9 (4)(A) is that it was meant to serve the public policy purpose of preventing businesses from avoiding their responsibilities to repay high interest business loans incurred in the exercise of their business judgment, be it wise or unwise.
The defendant religious corporation neither is, nor has been proved by the plaintiff to be, "organized for a profit" or "engaged primarily in commercial, manufacturing, industrial, or nonconsumer pursuits." Accordingly, the exemption set forth in Connecticut General Statute § 37-9 (4)(A) is inapplicable to the defendant and unavailable to the plaintiff for those reasons.
The plaintiff's loans also fail to satisfy the element of the claimed exemption which provides that "the original indebtedness to be repaid is in excess of ten thousand dollars." Each of the five loans, which ranged from a low of $970 to a high of only $9,000, stands by itself as a separate and distinct transaction. According to the testimony of the plaintiff himself, prior to attending the closing of the purchase of the church building where he wrote the first loan check, the plaintiff had not entered into any specific agreement with the defendant under which the plaintiff would lend money to the defendant, and the plaintiff admitted that he came to the closing with no knowledge that the defendant would need any money from him in order to close the purchase. (Transcript, p. 18.) Moreover, the plaintiff acknowledged that he did not know at the time each loan check was written that there would be another time in the future when he would loan more money to the defendant; each instance arose separately and each check therefore represents a separate and distinct loan. (Transcript, p. 20.) The five checks were not advances made "pursuant to a revolving loan agreement or similar agreement"; neither did the parties ever enter into "a loan agreement providing for the making of advances to the borrower from time to time up to an aggregate maximum amount." The plaintiff has not pleaded or proved that the loans were so made or structured and the fact that the loans totaled more than $10,000 is beside the point, as the original amount of each indebtedness — each separate and distinct loan — was less than $10,000.
The court specifically finds that the exemption under 37-9 (4) does not apply to the loans made in this case, and therefore finds that the Special Defense of Usury has been proved. The court concludes that Special CT Page 9190 Defense is applicable to each count of the complaint and therefore judgment will enter for the defendant.
GORMLEY J.